UNITED STATES (BURROUGHS v.). See Case No. 2,202.

## Case No. 14,696.

### UNITED STATES v. BUTLER et al.

[2 Blatchf. 201.] [1]

Circuit Court, S. D. New York. May 17, 1851.

JUDGMENT—PAYMENT BY CREDITOR OF PRIOR INCUMBRANCE—RENTS AND PROFITS—LIEN.

1. Where, on the filing of a bill to remove an incumbrance on land, so that it may be sold under the plaintiff's judgment, a receiver is appointed of the rents and profits of the land, they are, in equity, subject to the lien and claim of the judgment, the same as the land itself.

2. Where the parties to such a suit settle it, the plaintiff getting rid of the incumbrance by paying to its holder a certain sum, and the land being thus left subject only to his judgment, the result is, in legal effect, the same, as it respects the lien of the judgment, as if a decree were to be made in the suit that, on payment of the sum, the prior incumbrance should be discharged.

3. On the payment of such sum by the plaintiff, under a decree, the land and the rents and profits would be applicable to the plaintiff's judgment; and, the incumbrance being disposed of by settlement, the land and the rents and profits that have accrued become subject to the judgment.

4. Nor does the fact that the land is then sold under the judgment, and satisfaction entered of the judgment, that being done in pursuance of an agreement with the defendant in the judgment, affect the right of the plaintiff to those rents and profits. They are, in equity, immediately applicable to the judgment when the right under the incumbrance is disposed of; and the agreement to enter the satisfaction after selling the land and applying the proceeds, will be construed, upon a fair interpretation, to intend that the rents and profits which have accrued and are in the hands of the receiver shall also be applied on the judgment.

This was a demurrer to a supplemental bill. The facts were these: In December, 1816,

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

the plaintiffs recovered a judgment against the defendant Thomas C. Butler, in the district court of the United States for the Southern district of New-York, for a large amount. The judgment was recovered on duty bonds, on which Butler and also one Minturn and one J. Sturgis were sureties for others. On the 12th of August, 1816, Butler and wife executed to J. Sturgis a mortgage, covering certain houses and lots in the city of New-York, to secure the payment of $27,000, without interest, in one year thereafter. The mortgage was given to indemnify J. Sturgis against liability on the said bonds. On the 31st of March, 1823, there was upwards of $30,000 due on the judgment against Butler, and on that day the original bill in this cause was filed, to remove the said mortgage as an incumbrance upon the lots, so that they could be sold under the said judgment. J. Sturgis had paid nothing, as surety to the government. Butler put in an answer to the original bill, admitting that the mortgage was given to J. Sturgis for the purpose of raising money to pay the bonds or the judgments recovered upon them; that he had so advised the attorney of the United States; and that he had received no consideration from J. Sturgis for the same. J. Sturgis also answered the original bill, alleging, among other things, that Butler was indebted to him at the time of giving the mortgage; that it was not given solely to indemnify him as surety to the plaintiffs on the bonds; that he had assigned the mortgage to secure the sum of $15,000 due and owing to the firm of Sturgis & Burrows, in Savannah, Georgia; and that Butler had admitted to him that funds had been put into his hands by Minturn & Champlin, the principal debtors in the bonds, to satisfy them, and had stated that he would be kept harmless. On the 11th of February, 1825, a supplemental bill was filed, making Burrows, the surviving partner of Sturgis & Burrows, a defendant, and praying a discovery as to the assignment of the mortgage, and that it might be delivered up and cancelled. Burrows answered, setting up a large indebtedness of J. Sturgis to him and his partner, and alleging that the assignment of the mortgage to them was made in part satisfaction of the same. Replications were filed to the original and supplemental bills, and proofs were taken in the case, and it was brought to a hearing, and, on the 20th of June, 1826, an order was made referring the case to a master, to take and state an account between the defendants Butler and J. Sturgis. [Case No. 16,414.] On the 7th of June, 1827, a further order was entered, appointing Thomas C. Bolton, the master, a receiver of the rents and issues of the premises covered by the mortgage. Before the master completed the reference, and on the 25th of July, 1830, an order was entered discharging him as master and receiver, and appointing in his place Murray Hoffman, who was authorized to receive the balance of money in the hands of Bolton, and deposit it in the New York Life Insurance and Trust Company. Hoffman continued as such receiver down to the sale, hereafter mentioned, of the mortgaged premises.

By an act of congress, passed March 24, 1834, (6 Stat. 555,) the secretary of the treasury was authorized to compromise the bonds and judgments, with the parties liable on them, and particularly with Minturn, surviving partner of Minturn & Champlin, the principal debtors. An arrangement was accordingly made, by which Burrows, the surviving partner of Sturgis & Burrows, in consideration of $6,000, assigned the mortgage to the plaintiffs; and it was further agreed, on the 12th of June, 1834, between the secretary and Minturn, by way of compromising and settling all the claims of the United States upon the late firm of Minturn & Champlin and their sureties, that Minturn should procure to be assigned to the United States the mortgage given by Butler to J. Sturgis, in order to clear the premises from embarrassment, so that they could be made available towards the payment of the judgment against Butler, and, in consideration of the assignment having been made, the plaintiffs stipulated to release all the judgments, (there having been separate judgments against the principal debtors and each of the sureties,) and to discharge them of record, as soon as the mortgaged premises should be sold under the mortgage, or otherwise disposed of. The premises were sold under the judgment against Butler, on the 10th of March, 1838, and purchased by John Rathbone for $25,500, which was much less than the amount then due on the judgment, and the mortgage was assigned to him as a muniment of title. Satisfaction of the several judgments was entered of record on the 4th of August, 1840.

The supplemental bill which was now filed set forth the above facts, and alleged that Hoffman, the receiver, had in his hands $9,000; that a large sum of money, far exceeding the sum in the hands of the receiver, remained due on the judgment against Butler, over and beyond the amount brought by the sale of the mortgaged premises; and that the defendants Laird M. H. Butler and Jonas Butler claimed the funds in the receiver's hands, under an assignment of some interest in the lots from T. C. Butler, but the bill charged that it was made, if at all, during the pendency of the suits against T. C. Butler and the others, and of which these defendants were chargeable with notice. The bill also set forth various judgments recovered by the plaintiffs against T. C. Butler for debts due from him individually, and which remained unpaid, and were a lien on the lots covered by the mortgage, or on T. C. Butler's equity of redemption in them. The bill prayed that the sum in the receiver's hands might be directed to be paid over to the plaintiffs on the balance remaining upon the first-mentioned judgment against T. C. But-

ler, or upon those last-named. To this supplemental bill T. C. Butler and L. M. H. Butler demurred.

Benjamin F. Butler, for plaintiffs.
Edward Sandford, for defendants.

NELSON, Circuit Justice. The answer of Thomas C. Butler to the original bill admits that the mortgage was given to Sturgis for the benefit of the plaintiffs, that is, for the purpose of raising money to pay the judgments recovered on the custom-house bonds, and was, therefore, properly no real incumbrance on the premises, as respected the judgment against Butler. So far as his interest was concerned, therefore, they might have been sold at once under the judgment, and the proceeds applied in payment. The sale, however, was embarrassed by the interest in the mortgage set up by Sturgis, the mortgagee, and by Sturgis & Burrows, the assignees under him. But as, on the filing of the bill to remove this incumbrance, a receiver had been appointed, for the purpose of securing the rents and profits pending the litigation, that they might be applied towards the satisfaction of the judgment, if necessary, they are, in equity, to be deemed subject to the lien and claim by virtue of the judgment, the same as the premises themselves.

The rents and profits thus accruing would have been applied to the judgment, together with the proceeds of the sale, if the proceedings in equity had gone to a final decree in favor of the plaintiffs. Certainly, there would have been no ground for any other disposition, as it respected Butler or those coming in under him, as he had admitted that the premises were subject to the lien of the judgment, from the time it was docketed, free from the mortgage. The litigation with him, as it respected the mortgage, and the right of applying the premises to the satisfaction of the judgment, ended on the coming in of his answer. It continued only in respect to the claim of Sturgis and his assignees. If they had succeeded in establishing the mortgage, and if the premises had, on being sold, turned out to be insufficient to satisfy that security, perhaps they would, it being the first lien, have been entitled, in equity, to have the rents and profits accruing and in the hands of the receiver applied to its payment. That was a question, however, between the plaintiffs and those parties.

Has, then, the settlement made with Minturn and the assignees of the mortgage in any way affected the right of the plaintiffs to this fund? I do not see how this can be. The parties, instead of carrying on the litigation to a final determination, preferred to settle it; and the plaintiffs, by paying the sum of $6,000, got rid of the mortgage incumbrance, and the premises were thus left subject only to the lien of their judgment. In legal effect, the result is the same, as it respects the lien of the judgment, as if a decree had been made, on the coming in of the master's report, that, on payment of such sum, the prior incumbrance should be discharged. On the payment of that sum, the premises and the rents and profits that had accrued and were in the hands of the receiver, would have been applicable to the judgment of the plaintiffs against Butler. The mortgage having been got rid of by the settlement, every thing was accomplished that would have been by a decree to the effect above stated. The land and the rents and profits that had accrued became subject to the judgment; and this is what, as is apparent, was intended by the parties, in their arrangement.

Neither does the entry of satisfaction of the judgment after the sale in any way affect the right of the plaintiffs to the rents and profits. They were in court, awaiting the result of the litigation, to be applied to the judgment; and, in equity, were immediately applicable when the right under the mortgage was disposed of. Besides, the whole scope of the settlement clearly shows, that it was intended by all parties concerned, that the premises covered by the mortgage, and the rents and profits that had accrued and of right belonged to the judgment creditors, should be applied to the plaintiffs' demand. Butler had nothing to say in the matter, as he had admitted this right in his answer.

I am satisfied, therefore, that there is sufficient equity in the bill to entitle the plaintiffs to this fund, and that the demurrer should be overruled.